turn to the third case on our calendar, John Doe versus Michael McSweeney. Good afternoon. The appellant's counsel is appearing by Zoom. Actually, I'm on the telephone, Judge. On telephone, sorry. Telephone, definitely, it's close enough. Thank you. Sure, thank you. Okay, so let me begin with the issue of standing. The plaintiff has alleged that under the current regime in which he knows that he cannot pose this marriage in the context of it being permissible, should he receive an affirmative response. And he alleged that he would sustain emotional harm just by going through that process. Which is really something that's indisputable. Someone who proposes marriage, knowing that that person is essentially acting in effect on a false pretense, i.e., that person cannot complete the marriage, would be understandably, as we allege, emotionally quite distressing. And so I don't think there's any real realistic question that that is sufficient for standing. The only sort of distance to that that the government or the city gives is that they're saying, well, you have to go through the actual process and try to get a marriage license, but as we explained in our papers, that would be futile. Because it's indisputable, as the government or the city also had said in the lower court, that the city clerk would, in fact, deny that license. And as I point out, or we point out in our, I think it was in one of the briefs, that one must disclose the relationship between the two potentially married people. So there's no question that unless Doe is going to break the law and lie to the city clerk, that the request for the marriage license would be denied. Now, as far as the substantive issue is concerned, I don't have much to add to the brief, because I think they were rather comprehensive. But I think it's really disputable that, I'll probably not pronounce it correctly, but the Oberfeld case, the same sex marriage case, clearly is on point here. I mean, the biggest, the strongest argument- Counsel. I'm sorry. Yes. Here is my problem. I believe that we are either bound of the merits by the Supreme Court's decision in the polygamy cases, which have never been overruled, or that those cases have been diminished by Obergefell. But if it is bad, then the question of what is covered and what is not is immensely textual. It depends on just what the relationship is, if it can be prohibited or not. There is all sorts of things that we can only know in a real case. And the problem is that we don't really know what your case is about, which is why I don't find . . . I have trouble with saying they're standing. Because either you lose on the past cases, or if you have any argument at all, it has to depend on facts, which we simply don't have in this case, because you don't have them. There's a lot of background noise, unfortunately. So I really, unfortunately, could not hear everything you said, Judge, but I think I got the gist of it. And as far as the issue of standing, again, the injury for standing doesn't necessarily have to be the inability to get married. That's what the merits concern, of course. But again, if you put yourself in Doe's position, if he were to go to ask, in this context, in which it's illegal to complete the process, illegal to get married, just by asking the question, forget whether he would get an affirmative response or not. That's not part of our claim, that he would or would not, for that matter. But just to ask the question would obviously be very distressing. And I'm not really sure why- Mr. Bank, this is Judge Bianco, let me just- Why we're standing. Mr. Bank, with Judge Cabranes' permission, I just want to ask you on the merits. The New York Court of Appeals in New Glen in 2014 said that in describing why there is this law regarding banning incestuous marriages that talked about its universal horror. A horror perhaps attributable to the destructive effect on normal family life that would follow if people viewed their parents, children, brothers, and sisters as potential sexual partners. And the concurrence noted that those laws banning such relationships maintain the stability of the family hierarchy by protecting young family members from exploitation by older family members in positions of authority and by reducing competition and jealous friction among family members. So when you say that this case is, I forget what term you use, controlled by Obergefell, I don't understand how you can say that. And none of those considerations are obviously an issue in a same sex marriage. So why do you say that? Well, some of the issues, some of those issues are in terms of the society's historic objection of same sex marriage. There's no issue of protecting younger family members from exploitation by older family members in positions of authority. You don't have that issue in a same sex marriage. You don't have the issue of reducing competition and jealous friction among family members. You don't have that. You don't have the destruction of family life because people are viewed, and family members are viewing each other as potential sexual partners. None of those exist. Well, I beg to differ that they certainly can exist in any kinds of marriages. It could be two brothers who are both gay and there's competition from the outside. But to get to your question more directly, what you're driving at, I think, and I understand, leads to the question of, is a complete ban the least restrictive measure that the government can take? Well, if we're talking, for example, and I respect the point because I think it definitely has some validity, that, let's say, for example, family friction. Well, is the ban narrow enough? Does it only deal with potential family friction? Like, for example, a father trying to, I'll use the word groom, groom his daughter for a future relationship or marriage. Well, if that were the case, then why does the prohibition apply to parents who never even met their biological children until they all became adults? That's clearly overbroad. So while there are always valid concerns about any type of marriage could be right for abuse, both before, during, or after marriage is consummated. But again, how is a blanket prohibition, for example, a 50-year-old person and a 28-year-old person meet for the first time, fall in love, want to get married, and then along the course, somehow they discover they're either brother and sister, parent and child, or what have you. They should fall within the sweep of this prohibition. That doesn't do anything to protect families. And again, there are other lesser means. For example, we talked in the brief about in Virginia, where you can have a so-called underage marriage. But there's a conditional... Councilor, how do we know that we have before us anything like these cases, even assuming that you have an argument on these cases? How do we know we have anything like those cases, when you have that doesn't tell us anything about what is involved? Well, again, it's unfortunately a little background noise here, but I'll do my best. Which is, again, we didn't include much in the way of detail. We didn't say whether the parent and child live together, how old they are, whether they ever had a romantic relationship, and if so, when, and so on and so forth. Those questions could be for discovery, and that's fine if the government wants to make an argument in discovery. But again, here we're challenging the prohibition, and the prohibition is indisputably overbroad. Because all the concerns, and many of those concerns were voiced against same-sex marriage. Not all, there are some differences, to be sure, but many of the same concerns, traditional... Are you aware of any case in the history of the United States where a court has struck down such a law? In any jurisdiction, state or federal, anywhere in the history of the United States? I'm not aware, and prior to 1980-something or other, there were a number of same-sex marriage cases, and they were all laughed out of court. And they weren't even taken seriously. Thanks very much, Mr. Beck. Thank you. You've reserved some time, and I've given you some extra time. Yes. Thank you very much. Thank you. Ms. Carlin? Sorry. May it please the court, Antonella Carlin for the city clerk. The district court correctly dismissed plaintiff's complaint. Before a court will decide a case, a plaintiff must establish that it presents an actual controversy. That means, among other things, that the complaint must put forth facts that establish standing. Facts that show that the plaintiff suffered or will suffer an injury that is particular to them. Facts that show that that injury is traceable to the acts of the people that the plaintiff has chosen to sue. In this case, the city clerk. And facts that establish that this court can redress that injury. The complaint here establishes none of these things. There's no allegation that the plaintiff and their parent or child have been denied a marriage license. No allegation that the two have even sought a marriage license. More fundamentally, there is no allegation that plaintiff has asked their parent or child to marry them. And no allegation that if plaintiff does ask their parent or child to marry them, that person would say yes. In fact, there are no facts in the complaint that could even establish an inference that this other person, who is not a party to this lawsuit and is thus not seeking an order from the court to enjoin the city clerk from denying them a license. Would say yes, if and when plaintiff asked them to marry. The complaint doesn't even allege that the two are in a relationship beyond that of parent and child. The only relevant allegation is a conclusory statement that plaintiff will suffer emotional harm if they are forced to propose while these laws are on the books. But to the extent that that bare statement is sufficient to establish a concrete injury, that injury is not traceable to the city clerk. The city clerk is responsible for issuing marriage licenses and has no authority whatsoever over what laws are on the books. Further, the fact that the laws may be deterring plaintiff from proposing doesn't establish an injury in fact. At most, it provides an explanation for why plaintiff has decided not to propose. But that still doesn't solve plaintiff's problem, that there is nothing in the complaint to indicate that if they do propose to this other person, that person would say yes. At bottom, the complaint is so lacking in necessary information that this court could not, even if it wanted to, infer the possibility of an injury that is attributable to the city clerk. The best that can be said of the complaint is that it has manufactured a hypothetical controversy in an attempt to have this court issue an advisory opinion. The court should therefore affirm the dismissal of the complaint on the threshold ground of standing. I'm happy to touch on the merits if the court would like. Just briefly, no matter what lens you view this case through, the laws at issue here are constitutional. There's no constitutionally protected right to enter into an incestuous marriage between a parent and a child. Incestuous relationships between parent and child are neither deeply rooted in this nation's history, nor are they implicit in the concept of ordered liberty. All 50 states- Is, counsel, is an attempt to enter into an incestuous marriage criminally prohibited? Is an attempt? No. What is prohibited? I'm sorry? Is an incestuous marriage criminally prohibited? An incestuous marriage is, and it's void. Yes. So, if we follow Justice Scalia, who said that when intersex relations could no longer be made criminal, it would lead to overgefell, that would still say where it is legal to prohibit, that's a very different situation, isn't it? I don't know that, I'm sorry. You follow me? I'm saying that it's very different to say that relationships which are legal may give rise to- While relationships which are illegal do not. Yes, I think that's correct. And I think a big difference between same-sex marriage and incestuous marriage, and the court made this clear in Obergefell, is that when you look at the history of the prohibitions on same-sex marriage, it was out of animus and bigotry, whereas here, there are very legitimate reasons for states to prohibit these kinds of marriages and relationships. I would also just add that the factors that Obergefell identified as making marriage a fundamental right don't apply here, at least not with the same force that they do to other types of relationships that have been found to come within the scope of the fundamental right of marriage. Incestuous marriage between a parent and child does not safeguard children and families, nor does it promote social order. In fact, it does just the opposite. As many sociologists and anthropologists have concluded, introducing romantic or sexual love into familial relationships creates a form of sexual competition and jealousy that is foreign to and destructive of familial bonds. The unique parent-child relationship is wholly incompatible with the marital relationship. It is the unique relationship of parent as life giver, caregiver, and authority figure that makes it so destructive for a parent to enter into an intimate or maritable relationship with the child. These relationships have long been considered structurally coercive and exploitive. Again, just no matter what lens you view this through, the state law is prohibiting an incestuous marriage between a parent and a child are constitutional. And unless the court has any questions, we'll rely on our brief. Thank you very much, Ms. Carlin. Mr. Bank, you've reserved three minutes. Yes, thank you. Again, my colleague doesn't seem to deny the fact that the prohibition is overbroad. It's not limited to the situation that the city describes as being of concern. And as far as this idea about one person having power over another, I don't think it would be constitutional to prohibit a teacher from marrying a student once they were both adults. Even though the possibility that that could happen, at least in theory, could cause a teacher to try to take advantage of a minor student. But we don't say if they're both 30 years old or whatever age it is as adults, that well, you were once the teacher of Johnny, so the two of you cannot get married. The prohibition is clearly not restricted. It is in large part, not 100%, but in large part, it is based on animus toward these types of couples who are viewed in a very negative way. And as Justice Scalia said very specifically in Lawrence, and this is before Oberfeldt, he said in Lawrence, quote, state laws against, among other things, adult incest. He didn't say child incest. Adult incest are sustainable only in light of Bowers, the case that Lawrence overruled. Are sustainable only in light of Bowers, Bowers, apostrophe. Validation of laws based on moral choices. Every single one of these laws, meaning laws including laws against adult incest and so forth. Every single one of these laws is called into question by today's decision. And I think Oberfeldt made it very clear that just because society historically has found something unappealing or denied it, in the case of same sex marriage, that is not a reason to exclude somebody from the institution of marriage. So certainly, if, for example, were to discover that, and let's say the couple here at issue, that there was an abusive relationship, there was grooming, whatever it might be, that might well be a reason for the state or the city to deny a marriage license to that couple. But until that is settled, until that would have come out in discovery, the case cannot be dismissed because, again, the government does not contend that there are no, I don't think the government has contended that there is no potential marriage of the type we're dealing with here that could be constitutionally balanced. Maybe some are not, that's fine. But some are, a complete ban is clearly, clearly unconstitutional. There is no constitutional basis, no legitimate basis, for example, as I said earlier, for the state to say to a couple that, you've been married for five years and you suddenly first discovered that you're close relations, but you now have to get divorced, the marriage gets annulled, they're already raising children of their own or whatever the case might be. So again, there are other ways to do it, and as far as just my last word here, on the issue of standing, it is perfectly clear that the allegation of standing is attributable to the city clerk's unquestionable denial. There's no question the city admitted this blow in the lower court. The city clerk would, in fact, deny the license. And therefore, the couple does not have to go seek the license, and the plaintiff does not have to receive an affirmative answer, because the specific injury regarding standing is, and again, I think it's very clear and logical that it would be a very emotionally traumatizing situation to propose marriage, knowing that you're acting fraudulently. That you can't propose the marriage, and therefore, either he's acting, and I'm using he generically, acting in a fraudulent way by proposing the marriage. And if he does receive an affirmative response, now he has the added emotional distress of knowing that the marriage cannot be completed. There's no question that- Thank you. Thanks very much. Thank you. Thank you. We appreciate the argument. We'll reserve the session. Thank you.